JUDGE BAER

08 CV 5386

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

           Plaintiff,

           v.

JOSHUA M. EUDOWE,

           Defendant.

RECEIVED JUN 13 2008 U.S.D.C. S.D. N.Y. CASHIERS

**COMPLAINT**

Plaintiff Securities and Exchange Commission ("Commission") alleges as follows:

## SUMMARY

1. This case involves a fraudulent trading scheme perpetrated by Defendant Joshua M. Eudowe ("Eudowe"), who purchased, without authorization, several thousand shares of thinly-traded stocks in the client accounts of his employer, Lawrence J. Goldstein ("Goldstein"), who is also Eudowe's stepfather, and then sold several thousand shares of these same stocks he held in his personal account at artificially inflated prices to profit from his scheme.

2. Goldstein, a registered representative with FINRA (formerly known as the NASD), hired Eudowe in or around 2002 to assist him with research and marketing related to Goldstein's registered brokerage firm and unregistered investment advisory business. During the time he was employed by Goldstein, Eudowe was not a registered representative and was not authorized to execute client transactions without Goldstein's knowledge and consent.

3. On December 26, 27, and 29, 2006, Eudowe hacked into the electronic brokerage website maintained by Goldstein and used Goldstein's password to make unauthorized purchases of several thousand shares of FRMO Corp. ("FRMO") and CreditRiskMonitor.com, Inc. ("CRMZ") in two of Goldstein's client accounts. These unauthorized purchases caused the prices of both stocks to rise significantly. Eudowe then sold shares of FRMO and CRMZ he held in his personal brokerage account at the inflated prices to profit from his scheme.

4. By his conduct, Eudowe engaged in acts that violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]. Accordingly, the Commission seeks a final judgment permanently enjoining Eudowe from violating Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and requiring Eudowe to disgorge the amount of his ill-gotten gains from his sale of stock at artificially inflated prices, plus prejudgment interest, to pay a civil penalty, and granting such other relief as the Court deems appropriate.

## JURISDICTION and VENUE

5. This Court has jurisdiction over this action pursuant to Sections 20(b) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b) and 77v(a)] and sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa]. In connection with the transactions, acts, practices, and courses of business described in this Complaint, defendant Eudowe, directly or indirectly, made use of the means or instruments of transportation or communication in interstate commerce or of the mails.

6. Venue is proper in this Court pursuant to Section 22(a) of the Securities Act and Section 27 of the Exchange Act because certain of the acts, practices, and courses of business occurred within this District.

## DEFENDANT

7. **Joshua M. Eudowe**, age 36, is a resident of Westport, Connecticut. Beginning in or around 2002, Eudowe was employed by his stepfather, Lawrence J. Goldstein, a registered representative. During the relevant period, Goldstein owned a brokerage firm as well as an investment advisory business. Eudowe, who is not a registered representative, engaged in research and marketing for Goldstein's brokerage firm and advisory business. Eudowe represented himself to Goldstein's customers and clients as a managing director of Goldstein's brokerage firm and of his investment advisory business.

## FACTS

### Goldstein's Businesses and his Employment of Eudowe

8. Goldstein, a registered representative, was the sole employee and principal of a registered broker-dealer firm which he founded in 1982. Goldstein also founded various investment limited partnerships, through which he manages capital for several high net worth individuals and institutional investors.

9. Goldstein manages his brokerage firm and his advisory business out of a small office in Larchmont, New York. In or around 2002, Goldstein hired his stepson, Eudowe, to work with him at his Larchmont office.

10. Eudowe's job responsibilities were to learn the investment business from Goldstein and to assist Goldstein with research and marketing activities for his brokerage

3

firm and his investment advisory business. Eudowe also utilized his knowledge of computer systems to install a server and computer network for Goldstein's office.

11. From 2002 to 2007, Goldstein continuously promoted Eudowe, increasing his wages and providing him with greater responsibility. Although Eudowe held no formal title, Eudowe represented himself to Goldstein's customers and clients as a managing director of Goldstein's brokerage firm and of Goldstein's investment advisory business.

12. In 2006 and 2007, Goldstein had two employees in his Larchmont office, Eudowe and a secretary. Neither Eudowe nor Goldstein's secretary had the discretion or authority to execute securities transactions for customers of Goldstein's brokerage firm or clients of his investment advisory business. At the time, Goldstein typically executed securities transactions through a password-protected website, which was maintained by the trade clearing firm Goldstein used. Goldstein accessed the website, which contained all of his brokerage accounts and investment advisory accounts, by entering his personal username and private password. Goldstein did not share his password with Eudowe.

13. At some point in the summer of 2006, Eudowe took a leave of absence from his employment with Goldstein. Eudowe worked occasionally during the first few months of his leave, but from October through the end of the year, he was on leave full-time.

### Eudowe's Fraudulent Trading in Goldstein's Client Accounts

14. On December 26, 27, and 29, 2006, Eudowe, using Goldstein's username and password without Goldstein's knowledge, accessed Goldstein's client accounts and purchased several thousand shares of two thinly-traded stocks, FRMO and CRMZ.

4

Eudowe made these unauthorized purchases through five separate market orders, four placed in one of Goldstein's client advisory accounts and one placed in another of Goldstein's client advisory accounts. Eudowe's market orders artificially inflated the stock prices of these thinly-traded securities. The share price of both FRMO and CRMZ spiked to levels exceeding their 52-week highs as a result of Eudowe's unauthorized trading.

15.     On December 26, 2006, near the end of the trading day, Eudowe made unauthorized purchases of 5,000 shares of the stock FRMO in one of Goldstein's client accounts, which caused its price to rise from $5.60 per share to $8.75 per share. The next morning, on December 27, 2006, Eudowe sold 2,000 shares of FRMO from his personal brokerage account at the inflated price of $7.75 per share.

16.     On December 27, 2006 and on December 29, 2006, Eudowe again made unauthorized purchases of 3,500 shares and 5,000 shares, respectively, of FRMO in Goldstein's client accounts, which caused the stock price to rise to over $10.00 per share. On December 29, 2006, Eudowe sold 900 shares of FRMO from his personal account at the inflated price of $9.40 per share.

17.     Also on December 29, 2006, Eudowe purchased 1,000 shares of the stock CRMZ into his personal brokerage account at $2.00 per share pursuant to a limit order. Minutes later, Eudowe purchased 4,900 shares of CRMZ in one of Goldstein's client accounts without authorization, which caused the stock price to rise from $2.00 per share to $3.00 per share. Minutes later, Eudowe sold 339 shares of CRMZ from his personal brokerage account at the inflated price of $3.00 per share.

18. Eudowe attempted to sell additional shares of FRMO and CRMZ from his personal brokerage account but the limit orders for these additional shares went unfilled due to the thinly-traded nature of these stocks.

19. Eudowe realized a profit of $8,059 on his sales of FRMO and CRMZ from his personal brokerage account at the inflated prices caused by his unauthorized trading in Goldstein's client accounts.

20. Goldstein was unable to determine who made the unauthorized purchases in his client accounts and, in mid-January 2007, directed his clearing firm to transfer the shares of FRMO and CRMZ purchased in late December 2006 from his client accounts to his personal investment account so that his clients would not bear the harm of the unauthorized trading.

21. The Internet Protocol ("IP") addresses of the computers from which the unauthorized buy orders were made show that Eudowe made each of the five unauthorized purchases executed during the period from December 26 through December 29, 2006.

## CLAIMS FOR RELIEF

### Violation of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]

22. Paragraphs 1 through 21 are re-alleged and incorporated herein by reference.

23. Defendant Eudowe, directly or indirectly, by use of the means or instruments of transportation or communication in interstate commerce, or of the mails, in the offer or sale of securities, has employed devices, schemes, or artifices to defraud,

6

or has engaged in transactions, practices or courses of business which operate or would operate as a fraud or deceit upon a purchaser.

24. By engaging in the foregoing conduct, defendant Eudowe violated Section 17(a) of the Securities Act.

### Violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]

25. Paragraphs 1 through 24 are re-alleged and incorporated herein by reference.

26. Defendant Eudowe, directly or indirectly, by use of the means or instruments of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of securities, has employed devices, schemes, or artifices to defraud, or has engaged in acts, practices or courses of business which operate or would operate as a fraud or deceit upon any person.

27. By engaging in the foregoing conduct, defendant Eudowe violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

### RELIEF REQUESTED

Wherefore, the Commission respectfully requests that this Court enter a final judgment:

A. permanently enjoining Joshua M. Eudowe from violating Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder;

B. ordering Eudowe to disgorge all profits realized from his unlawful conduct alleged herein, with prejudgment interest;

C.  ordering Eudowe to pay a money penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; and

D.  granting such other and further relief as this Court deems appropriate.

Respectfully submitted,

_/s/ Scott W. Friestad_
Scott W. Friestad (SF 8048)
Laura B. Josephs
Linda Berrafati Moran
Scott E. Seewald
Attorneys for Plaintiff
Securities and Exchange Commission
SEC Division of Enforcement
100 F Street, N.E.
Washington, DC 20549
(202) 551-4962 (Tel.)
(202) 772-9231 (Fax)

Dated: June 13, 2008